## JEFFRIES v. STUART.

(Circuit Court of Appeals, Third Circuit. December 4, 1914.)

### No. 1871.

1. MASTER AND SERVANT (§§ 286, 289*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action by an employé of a building contractor, injured by the tipping of planks resting on beams to form a platform and extending to the wall of the building, to which they appeared to be, but were not, fastened, evidence *held* to make questions for the jury as to defendant's negligence and plaintiff's contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. §§ 286, 289.*]

2. MASTER AND SERVANT (§§ 101, 102, 231*)—LIABILITY FOR INJURIES—DUTY TO FURNISH SAFE PLACE.

It is an employer's duty to take all reasonable and proper care to provide as safe a place for the employé's work as the character of the work permits; and the employé may assume, in the absence of anything to the contrary, that the employer has fulfilled his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192, 675–677; Dec. Dig. §§ 101, 102, 231.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Hunt, Judge.

Action by Frederick Jeffries against James L. Stuart. Judgment for plaintiff, and defendant brings error. Affirmed.

Frederic W. Miller and Reed, Smith, Shaw & Beal, all of Pittsburgh, Pa., for plaintiff in error.

J. Thomas Hoffman and Stone & Stone, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] In the court below Frederick Jeffries, the plaintiff, a citizen of Ohio, brought suit against James L. Stuart, a citizen of Pennsylvania, to recover damages for personal injuries sustained by him while working for the defendant, and caused, as he alleged, by the defendant's negligence. The case was tried, and resulted in a verdict for plaintiff. On entry of judgment thereon, defendant sued out this writ. The single assignment of error raises the only question brought here for review, namely, whether the trial judge erred in denying defendant's request that:

"Under all the pleadings and evidence in this case, the verdict must be for the defendant."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The proofs tend to show defendant was contractor for the erection of a ten-story, steel-framed building in Pittsburgh. The plaintiff, who had no experience in structural iron working, entered defendant's employ 16 days before the accident and was set to work as an assistant to his brother Joseph, who was an experienced structural iron worker. On the day of the accident the steel framing of the 10 stories had been substantially completed, but none of the floors had been covered above the fifth. The elevator shafts were in course of construction, and plaintiff, under the directions of his brother, was engaged on the third floor in drilling holes and fastening steel brackets in a brick wall of such shafts. Joseph Jeffries, who had this work in charge, finding he needed some angle irons, and in such event having had orders to get them on whatever floor they were found, directed plaintiff to go after and bring back some such irons. The plaintiff, finding none on the third, fourth, and fifth, went to the sixth, floor, which was not covered. On that floor he found four angle irons, weighing about 50 pounds each, lying on planks laid across the elevator shaft, which the proofs showed was used as a place on which "to run material, etc." In getting the angle irons therefrom the plaintiff was thrown to the foot of the shaft by the tipping of the planks.

The testimony tended to show that the planks covering this elevator shaft extended across two beams outside the elevator shaft, and then across the shaft itself to a wall at the rear, and presented the appearance of such rear end being fastened to and supported by the wall. For some two days there had been a large number of planks piled upon the forward end of these platform planks. They served to weight down the elevator planks and prevent their rear ends from tipping. These weighting-down planks had been removed to an upper floor just before Jeffries' accident, and when they were taken away the rear end of the elevator planks, which had no support from the wall, were of course liable to tip when any one stepped upon them. The testimony of the plaintiff was:

"Q. What instructions, if any, were issued to you, about getting angle iron? Who told you to go and get some angle iron, if anybody? A. Joe, my brother. Q. You were working as a helper for him? A. Yes, sir. Q. And he told you to go and get it? A. Yes, sir. Q. Did he tell you where to go to get it? A. No. He didn't know just where it was, and he told me to go up and look for it. Q. On some of the floors above? A. Yes, sir. Q. And pursuant to that you went up? A. Yes, sir. Q. Did you look on the fourth floor for any? A. Yes, sir. Q. And you didn't find any? A. Didn't find any, and I went up to the fifth. Q. What did you do there? A. I didn't find any, and I then went on up to the sixth and looked around. Q. Did you find any on the fifth? A. No, sir. Q. Then you went on up to the sixth? A. Yes, sir. Q. Was there any up there? A. Yes, sir. Q. With respect to the old wall of the building, where was this angle iron on the sixth floor lying? A. Over next the old wall. Q. Where, with respect to where you saw this angle iron, were the elevator shafts? A. Right in under. Q. When you got on the sixth floor, you saw the angle iron, did you? A. Yes, sir. Q. On what was the angle iron lying, if anything? A. It was lying on these plank. Q. On the plank? A. Yes, sir. Q. Next where were the plank? A. Next the old wall. Q. Do you remember how much of an area immediately surrounding where you saw this angle iron, of the steel work, was covered by the planks? A. It was about 16 feet square. Q. Had the other planking been

removed; that is, the only planking you saw there? A. That is the only plank I saw. Q. Prior to this day that you went up to the sixth floor for this angle iron, how many times had you ever been on the sixth floor? A. That was my first trip up. Q. How did you go up to the sixth floor? A. A ladder. Q. You climbed a ladder? A. Yes. Q. A ladder from the third to the fourth, and fourth to the fifth, and fifth to the sixth? A. Yes, sir. Q. On what did you walk from the place you landed on the sixth floor, at the top of this ladder, to where these planking were? A. Walked on the beams. Q. When you got to the place where the planking was, tell us what you did to look over the planking to see their condition. A. Well, I looked at it, and it looked safe to me, so I stepped out on it until I got the angles, and she just tipped up, and I went down. Q. On what were the planking resting? A. They were not resting on anything that I know of. Q. You mean the end on which you stepped; but what was the other end resting on? A. On the beams. Q. Did you notice whether the planking touched two beams, or just one? A. Two beams. Q. And then ran out toward this wall? A. Yes, sir. Q. What did you do about looking around to see if it was fastened to the wall —the planks? A. It just looked to be safe to me. Q. Did it look to you or not as if they were fastened to the wall? A. They looked as if they were fastened to the wall. * * * Q. Tell us with respect to these I-beams where you first stepped on the plank. Tell us where you first stepped on the planks. A. About middleways. Q. Can you describe that a little closer with respect to the two I-beams on which the planks were resting? A. I don't understand what you mean. Q. As I understand you, the planks were resting one end on an I-beam, then rested on another I-beam, and then reached over to this wall. A. Yes, sir. Q. Now I want you to tell the judge and the jury where you first stepped, whether or not it was between the two I-beams, or between the I-beam and the wall? A. Between the I-beam and the wall. Q. Where was the angle iron? A. It was laying right at the last I-beam. Q. Where was the angle iron with respect to the wall and the I-beams? A. About middleways. Q. Was it between the I-beam and the wall, or between the two I-beams? A. Between the I-beam and the wall. Q. About how far from the I-beam? A. Probably three feet. Q. And when you stepped out on these planks what happened? A. She just went down. Just as I went to pick up the angle iron, she just went down through. Q. How many of them went down, do you know? A. Planks? Q. Yes. A. I don't know. Q. Do you know whether there was more than one? A. There was more than two of them."

Under these proofs, the court would have been in error had it said as a matter of law the plaintiff was not entitled to recover. Under the pleadings and proofs, the right of the plaintiff to recover was a question for the jury, not the court, to determine.

[2] Of the duty of an employer, to take all reasonable and proper care to provide as safe a place for the employé's work as the character of the work permits, there can be no question; and the employé's right to assume, in the absence of anything to the contrary, that the employer has fulfilled his duty, is equally plain. In view of these things, was it the exercise of due care, when the defendant removed the planks which held the platform in place, to permit the protruding planks to stand unsupported at their rear ends? But not only were they left unsupported, but the leaving of such heavy weights as these angle irons was not only reason for supposing that such support existed, but the irons themselves might well invite men who needed them to go on the platform to get them. When, therefore, the plaintiff, in pursuance of his duty, went to the sixth floor to get the angle irons, it was a question for the jury to decide whether the defendant had taken all reasonable care for the safety of the employé, and, if not, whether the plaintiff had

been guilty of contributory negligence in failing to take due care for his own safety.

The court below was therefore justified in refusing to take the case from the jury, and the judgment based on such verdict should be affirmed.